UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| KAYLA SARTOR,<br>　　　Plaintiff,<br><br>VS.<br><br>CITY OF BIG SANDY, TEXAS;<br>　　　Defendant | §<br>§<br>§<br>§　CIVIL ACTION NO. 2:25-1218<br>§<br>§<br>§<br>§　JURY DEMAND |

### PLAINTIFF KAYLA SARTOR'S ORIGINAL COMPLAINT

Plaintiff **KAYLA SARTOR**, by her attorney, files this her Original Complaint against Defendant City of Big Sandy, Texas, alleging as follows:

### I.    JURISDICTION AND VENUE

1. This action arises under Title VII of the Civil Rights Act of 1965, (Title VII), 42 U.S.C. § 2000e, *et. seq*. Thus, this Court has subject matter jurisdiction under 28 U.S.C. § 1331.

2. This Court has general personal jurisdiction over Defendant City of Big Sandy because it is a municipality that is wholly located within this District and Division. Thus, it is generally present within this District and Division.

3. Venue is appropriate in the Eastern District of Texas and the Marshall Division under 28 U.S.C. 1391 because Defendant City of Big Sandy is wholly present within this District and Division and/or the events the events in question giving rise to Plaintiff's claims occurred in Big Sandy, Upshur County, Texas, within this Division and District.

### II.   THE PARTIES

4. Plaintiff **Kayla Sartor** ("Sartor") is a resident and citizen of the United States and of Texas, residing in Gilmer, Texas. She was formerly employed in Defendant's Police Department as a uniformed Police Officer.

5.  Defendant **City of Big Sandy, Texas** is a governmental entity, located wholly within Upshur County. Big Sandy is chartered under Texas municipal law. It may be served through its City Administrator, Laura Rex, or its Mayor, Linda Bagget, at:

> Big Sandy City Hall:
> 119 East Gilmer Street
> Big Sandy, Texas 75755

### III.   THE FACTUAL BACKGROUND OF THE ACTION

6.  Plaintiff readopts the factual allegations asserted above in the Jurisdiction and Venue Section within paragraphs 1-5, as if fully restated herein.

7.  Plaintiff Kayla Sartor, was formerly employed by the Big Sandy Police Department, until she was wrongfully terminated in violation of Title VII, based on her sex – female, and/or in retaliation for protected activity of merely informing the Department that one of its new employees had formerly sexually harassed her and others at his prior place of employment, which was the police Academy that Sartor graduated from, and seeking to work in an environment free of unlawful sexual harassment.

8.  Specifically, in 2013, while Sartor was a cadet at the police academy, she was sexually harassed by Officer Travis Prew. That incident was never formally documented at the time, but it had a lasting impact on Sartor.

9.  Years later, in 2019, a separate female cadet filed a documented complaint against Prew for sexual harassment. That complaint included her written statement, screenshots of inappropriate messages, and ultimately resulted in his resignation letter.

10. Despite knowing her history with Prew, and Prew's history of sexual harassment against Plaintiff and other females, Big Sandy Police Chief Easterling hired Prew to be a police officer for Big Sandy. One of Prew's tasks was to be the Department's firearms instructor, which

would require Sartor to work directly with her former and current harasser in the gun range during which time his evaluation of her firearm proficiency could result in an adverse employment action.

11. From the time she was hired until October 2024, Sartor's sergeant would often prepare her unit and instructed Sartor she could avoid certain areas whenever Prew was around. Essentially Sartor's sergeant was protecting her from harassment by advising Sartor to disappear so she would not have to be around Prew. In other words, Sartor's own sergeant's conduct indicated that he was aware that Sartor needed protection from Prew, and although he was ready, able, and willing to provide a workplace free of harassment, Chief Easterling was not.

12. Sartor had already experienced issues during firearm qualifications in 2023, when Officer Dave Morris had to physically place himself between Prew and Sartor because of the way Prew was interacting with Sartor in an offensive and harassing manner. Prew's conduct made Sartor extremely uncomfortable, interfered with her ability to perform her duties, and reinforced her belief that it would be inappropriate for her to be required to take her firearm requalification under Prew's supervision.

13. Weeks before the 2024 October qualifications, Sartor voiced her concerns to Sergeant Gene Anderson directly in front of a civilian in a ride-along who heard Sartor clearly state that she would neither be comfortable, nor safe, being placed under Prew's supervision for firearms qualifications.

14. During this time, there was also an occasion where Sartor overslept and arrived to her shift an hour late. It is not abnormal for a member of the night shift to sometimes oversleep. As soon as Sartor woke up, she notified Sergeant Anderson. He made arrangements to come in an hour later the following morning so that Sartor still worked a full twelve-hour shift. In other words, this incident was known to management and taken care of. Despite this, the department would later

use this incident against Sartor, falsely accusing her of intentionally calling in late to avoid qualifications. That was never the case. Indeed, once during Easterling's tenure at the Big Sandy Police Department, a fellow male officer was written up for 'no call, no show' for his entire shift, which shift Sartor had to work. Missing an entire shift would often be considered a suspension or a termination and not a write up. Even so, this male officer was not terminated for missing an entire shift, and Sartor was later terminated for oversleeping and being an hour late.

15. On November 1, 2024, at 9:40 a.m., Chief Easterling called Sartor and left a voicemail instructing her to call him back. Sartor returned his call at 9:41 a.m., and he told her she needed to come in and speak with him. Sartor reminded him that she was scheduled to work that night, and he said to just come in at her regular shift time at 7:00 p.m.

16. A few hours later, Sartor's husband, who is a deputy with Upshur County Sheriff's Office, received an email from his supervisor advising him that their agency would be covering the City of Big Sandy's night shifts all weekend. Sartor's husband asked if Sartor was supposed to work that weekend, and Sartor confirmed that she was. At 1:52 p.m. that day, Sartor texted Chief Easterling to tell him that she would come in early before her shift to meet with him.

17. When Sartor arrived, Chief Easterling immediately handed Sartor her termination letter and informed her that she was being terminated. She was not allowed to provide any explanation or have a discussion about the reason for her termination. This entire meeting was audio recorded and is available as evidence.

18. Upon information and belief, Chief Easterling had hired Plaintiff's replacement prior to Sartor's termination. This is the reasonable conclusion from the facts that Sartor was fired on the afternoon of Friday November 1, and the replacement started the next Monday, November 4. In other words, Chief Easterling had made up his mind and acted to terminate Sartor without

**PLAINTIFF'S ORIGINAL COMPLAINT - PAGE 4 OF 11**

any proper Internal affairs investigation, any notice to Sartor that she was alleged to have violated any rules, or any attempt to hear Sartor's perspective. Even worse, Sartor's replacement was a male officer who, like Prew, has a prior history of sexual harassment.

19. Following Sartor's termination, she pursued her grievance and was represented by a lawyer affiliated with her police association CLEAT – the Combined Law Enforcement Associations of Texas. During her grievance hearing before City Council, Chief Easterling intentionally misrepresented facts by telling the council that the only complaints against Prew had come from a female cadet's spouse. However, the records from the academy prove otherwise: the complaint was from a female cadet who documented being sexually harassed by him in 2019, and the file includes her statement, screenshots of their conversations, and his subsequent resignation letter.

20. On November 8, 2024, her CLEAT attorney received confirmation of her appeal and was asked to schedule a date. The City first set the appeal for November 11, but it was rescheduled to December 9, 2024, when the appeal was finally heard over Zoom

21. Throughout this entire process, the Big Sandy Police Department violated several City and/or Police Department policies. Sartor was never properly notified that she was under investigation for insubordination, and she was never allowed to provide a statement in her own defense, even though policy requires it. Moreover, Chief Easterling lied during her appeal by misrepresenting the record of Officer Prew.

22. Sartor's termination was not the result of legitimate job performance issues. Instead, it was discrimination based on sex and/or retaliation for reporting sexual harassment and/or engaging in protected activity by merely asking to work in an environment free of sexual harassment by not being required to take firearm qualifications under an individual who had a

known history of sexual harassment, both towards Sartor and other females, and whose harassment against Sartor at the Big Sandy Police Department had previously required the physical intervention of another officer.

23. During Sartor's employment at the Big Sandy Police Department, from August 10, 2022 until her termination on November 1, 2024, she had no disciplinary issues and no complaints filed against her. Sartor's record was clear until the events surrounding these forced qualifications.

24. This sequence of events demonstrates a clear pattern of misconduct, retaliation, and a hostile work environment created by Chief Easterling's decision to hire Prew and then force Sartor into a position where she had to choose between her safety and her job. Moreover, an employee merely asking to not work with the person who previously sexually harassed that employee and for which the intervention of a co-employee was required to prevent new harassment is also protected activity under Title VII.

## IV.   LEGAL BACKGROUND

25. A retaliation claim under Title VII, 42 U.S.C. § 2000e–3(a), has three elements: (1) the employee engaged in activity protected by Title VII; (2) an employer took adverse action against the employee; and (3) a causal connection exists between the protected activity and the adverse employment action. *Webb v. Cardiothoracic Surgery,* 139 F.3d 532 (5th Cir.1998), *Grimes v. Texas Department of Mental Health, et al.,* 102 F.3d 137, 140 (5th Cir.1996); citing *Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir.1996); *Shackelford v. Deloitte & Touche, L.L.P.,* 190 F.3d 398, 404 (5th Cir.1999).

26. Under the first prong, to establish that the employee opposed a discriminatory practice, the employee may do so by demonstrating a good faith reasonable belief that the underlying discriminatory practice of the employer violated the law. *See Payne v. McLemore's*

*Wholesale & Retail Stores,* 654 F.2d 1130, 1140–41 (5th Cir.1981). The employee is not required to show that there was actual existence of an unlawful practice, only that she held a good faith reasonable belief that the employer engaged in activity made unlawful by Title VII or the TCHRA. *Id.*

27. Seeking to work in an environment free of sex discrimination and sexual harassment is protected activity. For example, An employee is engaged in a protected activity under Title VII when she has (1) "opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Haynes v. Pennzoil,* 207 F.3d 296 (5th Cir.2000); 42 U.S.C. § 2000e–3(a). "An individual may engage in protected activity by opposing any practice made unlawful by Title VII." *Carter v. Target Corp.*, 541 F. App'x 413, 418 (5th Cir. 2013); *Gandia v. USAC Airways 693 LLC*, No. 3:21-CV-1275-S, 2021 WL 5631678, at *2 (N.D. Tex. Nov. 30, 2021).

28. Accordingly, reporting sexual harassment is "clearly" a protected activity found under Title VII. See, *Gaspard v. J & H Marsh & McLennan of Louisiana, Inc.,* 105 F.Supp.2d 537, 544 (E.D. La. 2000). Thus, the Fifth Circuit has specifically recognized that reporting sexual harassment to an appropriate person qualifies as protected activity. *Cuellar v. Sw. Gen. Emergency Physicians, P.L.L.C.*, 656 F. App'x 707, 710 (5th Cir. 2016) (employee adequately alleged protected activity when she reported to human resources that supervisor promised "to spank her if she misbehaved.").

29. Making an internal complaint to the employer's management protesting the sexually harassing actions of a supervisor or supervisory co-worker is protected activity within

the policies of Title VII. *See Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir. 1992). As the Second Circuit explained:

> Title VII places upon an employer the responsibility to maintain a work place environment free of sexual harassment. * * * The EEOC Compliance Manual further provides that employers should create a procedure for resolving sexual harassment complaints that encourages victims of sexual harassment to come forward. It should ensure confidentiality as much as possible and provide *effective remedies, including protection of victims and witnesses against retaliation.*

*Id.*, citing *Newsday v. Long Island Typographical Union,* 915 F.2d 840, 844-845 (2d Cir.1990) (emphasis added), *cert. denied,* 499 U.S. 922, 111 S.Ct. 1314, 113 L.Ed.2d 247 (1991).

30.     Under clear Fifth Circuit precedent, the fact that an employer or an employer's decision-maker refuses to listen to or fails to even discuss the alleged claim against the employee is evidence that the reason is a pretext. *See Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F. 3d 581, 589-90 (5th Cir. 1999), subsequently vacated and then reinstated *en banc*, 182 F. 3d 333 (5th Cir. 1999); *Hart v. Starkville Ford-Lincoln-Mercury, Inc.*, case no. 1:10CV92–SA–DAS, 2012 WL 426440, (N.D. Miss. Feb. 9, 2012); *Taylor v. Seton Healthcare*, Case No. A–10–CA–650 LY, 2012 WL 13680, *26 (W.D. Tex. Jan 3, 2012).

31.     For example, in *Deffenbaugh-Williams*, the plaintiff was a white female who was married to a black male (Williams) and who asserted that the real reason for her termination was that she had married a black man and that the alleged reason for her termination, that she was "shopping on the clock" was false.

> When Gipson told Deffenbaugh that she was terminated for "shopping on the clock", she explained that the VCR had been purchased by Williams, not her; and that Gipson could verify this by asking a fellow employee who had seen Williams make the purchase. Deffenbaugh testified that Gipson told her that his "mind [was] made up". He did not interview possible witnesses to the sale, even after Williams approached him and told him that he had made the purchase; did not interview the cashier; and did not check to see if there was a videotape of the incident. Instead, Gipson relied on the cashier's handwritten report that Deffenbaugh had been present

>when Williams made the purchase, and that store records reflected the card's being used three minutes before Deffenbaugh checked out. *But, Gipson testified that handing a discount card to one's spouse before clocking out would not be a violation of Wal–Mart policy.* And, Deffenbaugh testified that she did not deal with the cashier who conducted the VCR transaction.

Id. at 590.

32. Other cases have also found that an employer's refusal to investigate complaints of harassment is evidence that the plaintiff engaged in protected activity by reasonably complaining. *Walsh v. Stratos Offshore Services Co.,* Case No.H-11-2603, 2012 WL 3929870, *5 (S.D. Tex. Sep. 7, 2012). Also, a minimal response to complaints of harassment, without results, is evidence of a refusal to take remedial action. *Rhines v. Salinas Constr. Techs., LTD,* CIV.A. No. C-11-262, 2012 WL 3249532,. at *4 (S.D. Tex Aug.7, 2012).

33. Moreover, it is evidence of pretext when two employees in the same incident or similar incidents are treated differently *Fuqua v. Wal-Mart Stores E., L.P.,* No.2:09cv188-SA-DAS, 2011 WL 2269020, at *4. (N.D. Miss. Jun. 7, 2011) (male employee allowed to transfer without interview process and female required to engage in interview process, when both had violated similar policy was evidence of pretext.).

## V.     CLAIM FOR RELIEF

### WRONGFUL TERMINATION IN VIOLATION TITLE VII BASED ON SEX AND/OR RETALIATION

34. Plaintiff realleges each allegation set forth in the paragraphs above.

35. By reason of the foregoing, Defendant, violated Title VII by wrongfully terminating Plaintiff's employment based on sex and/or in retaliation for protected activity merely because of her reporting sexual harassment and/or asking to work in an environment free of sexual harassment.

36. The reason given for her termination was a false and/or pretext for retaliation.

37. That the Chief had made up his mind to terminate Plaintiff without even hearing the Plaintiff's side of the facts, is one piece of evidence that his alleged grounds for termination was false and/or a pretext for discrimination and/or retaliation.

38. That the City terminated Sartor in violation of its policies is another piece of evidence that his alleged grounds for termination was false and/or a pretext for discrimination and/or retaliation.

39. Upon information and belief, additional evidence of pretext for discrimination and/or retaliation will be uncovered during discovery in this matter.

40. Plaintiff has been injured by her wrongful termination and as a result should receive compensatory legal damages and equitable remedies, including, but not limited to, equitable reinstatement or equitable front pay in the alternative; backpay; compensatory damages; and liquidated damages, and all such other relief in law or equity that the Court finds just and/or right.

41. Plaintiff timely filed charges of discrimination alleging sex discrimination and retaliation, has received a right to sue letter from the EEOC, and timely files this Complaint within 90-days of receiving each Right to Sue Letter.

## VI.    JURY DEMAND

42. Although the Plaintiff seeks an equitable injunction of reinstatement or equitable front pay in the alternative, even cases with remedies sounding in equity, to the extent there are one or more issues of fact or law suitable for a jury, the Plaintiff respectfully requests a jury trial on all such issues.

## VII.    PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Kayla Sartor seeks relief against Defendant, as follows:

That this matter be submitted to a trial by jury on all legal issues and as a bench trial for all issues of equity, and that Judgment be entered against Defendant:

a. Finding that that Defendant violated Title VII by wrongfully terminating her based on discrimination and/or retaliation;

b. Awarding Plaintiff direct financial damages and equitable relief under Title VII, including back pay; equitable reinstatement or equitable front pay; loss benefits in the past and in the future;

c. Awarding compensatory damages under Title VII for Plaintiff's mental anguish, loss of enjoyment of life, out-of-pocket expenses, and other foreseeable financial harm;

d. Awarding attorney fees under Title VII; and/or

e. Awarding costs of court, and all such other and further relief in law or equity as the Court deems to be just and right.

RESPECTFULLY SUBMITTED,

/s/ Eric N. Roberson

---

Eric Roberson
Texas State Bar No. 00792803
Kilgore & Kilgore, PLLC
3141 Hood Street, Suite 500
Dallas, TX 75219
214-379-0817 Direct
214.969.9099
214.379.0843 Fax
ENR@KilgoreLaw.com
**ATTORNEY FOR PLAINTIFF
KAYLA SARTOR**